UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KAITLYNN K.,[1]

                             Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.
_____

                             <u>DECISION & ORDER</u>

                             20-CV-1878MWP

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Kaitlynn K. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 12).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 10). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

### I.   Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise."  *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A child is disabled for the purpose of SSI if he or she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i). When assessing whether a claimant is disabled, the ALJ must employ a three-step sequential analysis.  *See* 20 C.F.R. § 416.924; *see also Miller v. Comm'r of Soc. Sec.*, 409 F. App'x 384, 386 (2d Cir. 2010) (summary order).   The three steps are:

(1)    whether the child is engaged in substantial gainful activity;

(2)    if not, whether the child has a medically determinable impairment or combination of impairments that is severe such that it causes more than minimal functional limitations; and

(3)    if so, whether the child's impairments or combination of impairments meet, medically equal, or functionally equal a presumptively disabling condition listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings").

*See* 20 C.F.R. §§ 416.924(b)-(d).

In determining whether a child's impairments or combination of impairments meet, medically equal, or functionally equal one of the Listings, the ALJ must evaluate the child's functioning across the following six domains of functioning:

(1)      acquiring and using information;

(2)      attending and completing tasks;

(3)      interacting and relating with others;

(4)      moving about and manipulating objects;

(5)      caring for oneself; and

(6)      health and physical well-being.

*See id.* §§ 416.926a(b)(1)(i)-(vi).  To be functionally equal, the impairment must result in a finding of "marked" limitations in two domains of functioning or a finding of "extreme" limitations in at least one domain of functioning.  *See id.* at § 416.926a(a).

A "marked" limitation is one that is "'more than moderate' but 'less than extreme'" and that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities."  *Id.* at § 416.926a(e)(2)(i); *see also Spruill ex rel. J.T. v. Astrue*, 2013 WL 885739, *5 (W.D.N.Y. 2013) ("[a] marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the child's] ability to function independently, appropriately, effectively, and on a sustained basis") (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)). An "extreme" limitation is "more than marked" and one that "interferes very seriously with [a child's] ability to independently initiate, sustain or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

An adult is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*).  The five steps are:

(1)    whether the claimant is currently engaged in substantial gainful activity;

(2)    if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)    if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4)    if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his/her] past work; and

(5)    if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'"  *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.   **The ALJ's Decision**

    In his decision, the ALJ acknowledged that plaintiff was under eighteen years old at the time of the alleged onset date of May 4, 2018, and that she attained the age of eighteen on July 26, 2018, before the date of the ALJ's decision.  (Tr. 12, 33).[2]  Accordingly, the ALJ analyzed the plaintiff's claim under the standards applicable both to childhood disability claims and those applicable to adult disability claims.  (Tr. 12-34).  For the period between May 4, 2018 and July 26, 2018, the ALJ followed the required three-step analysis for evaluating childhood disability claims.  (Tr. 17-27).  Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 4, 2018, the application date.  (Tr. 17).  At step two, the ALJ concluded that plaintiff had the severe impairments of obesity, anxiety disorder, major depressive disorder, attention-deficit/hyperactivity disorder ("ADHD"), and post-traumatic stress disorder ("PTSD")  (*Id.*).  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings.  (Tr. 17).

    In addition, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that functionally equaled one of the Listings.  (Tr. 17-27).  In reaching this conclusion, the ALJ evaluated plaintiff's impairments across the six domains of functioning.  (*Id.*).  Specifically, the ALJ concluded that plaintiff suffered from no limitations in the domains of acquiring and using information, moving about and manipulating objects, and health and physical well-being, and less than marked limitations in the domains of attending and completing tasks, interacting and relating with others, and caring for herself.  (Tr. 22-27).

---

[2]  References to page numbers in the Administrative Transcript (Docket # 8) utilize the internal Bates-stamped pagination assigned by the parties.

Accordingly, the ALJ found that plaintiff was not disabled prior to attaining the age of eighteen. (Tr. 27).

For the period after plaintiff attained the age of eighteen, the ALJ followed the required analysis for evaluating adult disability claims. At step two, the ALJ concluded that plaintiff continued to have the same severe impairments but had not developed any new impairments after she turned eighteen. (*Id.*). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 27-28). With respect to plaintiff's mental limitations, the ALJ found that she suffered from mild limitations in understanding, remembering, or applying information and moderate limitations in interacting with others, concentrating, persisting or maintaining pace, and in adapting or managing herself. (*Id.*).

The ALJ concluded that plaintiff retained the RFC to perform medium work but with certain limitations. (Tr. 28-33). Specifically, the ALJ found that plaintiff was limited to performing simple, routine, repetitive tasks in a low-stress work environment requiring only occasional decisions and changes in the work setting. (*Id.*). The ALJ also concluded that plaintiff should not be required to engage in team or tandem work or interact with the general public and should have no more than occasional interaction with supervisors and coworkers. (*Id.*).

At step four, the ALJ found that plaintiff had no past relevant work. (Tr. 33). At step five, the ALJ determined that other jobs existed in significant numbers in the national economy that, based on her age, education, work experience, and RFC, plaintiff could perform, such as charge box bender, polisher, and laundry worker. (Tr. 33-34). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

III.   **Plaintiff's Contentions**

Plaintiff argues that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 9-1, 11). Plaintiff's sole challenge is that ALJ erred in failing to develop the record by obtaining all of her educational records. (Docket ## 9-1 at 11-18; 11).

IV.   **Analysis**

"It is well established in the Second Circuit that an ALJ is under an obligation to develop the administrative record fully, to ensure that there are no inconsistencies in the record that require further inquiry, and to obtain the reports of treating physicians and elicit the appropriate testimony during the proceeding." *Martello v. Astrue*, 2013 WL 1337311, *3 (W.D.N.Y. 2013). Given the non-adversarial nature of a Social Security hearing, "[t]he duty of the ALJ, unlike that of a judge at trial, is to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) (quoting *Butts*, 388 F.3d at 386). Accordingly, before determining whether the ALJ's conclusions are supported by substantial evidence, a court must first evaluate whether the claimant was provided a full hearing "in accordance with the beneficent purposes of the [Social Security] Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982); *see Dougherty-Noteboom v. Berryhill*, 2018 WL 3866671, *7 (W.D.N.Y. 2018) (ALJ's duty to develop the record "is a threshold requirement for the SSA; the ALJ must develop the record prior to assessing whether a claimant is disabled"); *see also Archbald v. Colvin*, 2015 WL 7294555, *3 (E.D.N.Y. 2015) ("[t]he reviewing court must ensure that all of the relevant facts [are] sufficiently developed and considered") (quotations omitted).

8

The ALJ's duty to develop the record is not without limits; specifically, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quotations omitted); *see also Jones v. Colvin*, 2014 WL 2560593, *5 (W.D.N.Y. 2014) ("[i]f all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make his determination based upon that evidence"). Moreover, while the "duty to develop the record exists even when the claimant is represented by counsel," *Munerlyn v. Colvin*, 203 F. Supp. 3d 253, 264 (W.D.N.Y. 2016), the "duty is lessened where, as here, [p]laintiff's counsel fails to mention the records at the administrative level," *Jennifer S. v. Comm'r of Soc. Sec.*, 2022 WL 42413, *4 (W.D.N.Y. 2022); *Melissa I. o/b/o R.J.R.D. v. Comm'r of Soc. Sec.*, 2022 WL 3358138, *4 (W.D.N.Y. 2022) ("[a]lthough the ALJ has a duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record – indeed, to exhort the ALJ that the case is ready for decision – and later fault the ALJ for not performing a more exhaustive investigation"); *see also Dejesus Gonzalez v. Comm'r of Soc. Sec.*, 2017 WL 1051119, *4 (E.D.N.Y. 2017) (noting that it is "ironic that the same law firm that represented plaintiff at the hearing is accusing the ALJ of failing to obtain records when counsel at the hearing never alerted the ALJ to any gaps in the record").

For cases involving applications seeking childhood benefits, the regulations expressly provide that, if the claimant attends school, attempts should be made to gather information from "teachers and other school personnel" about how the claimant is functioning in school "on a day-to-day basis compared to other children [the claimant's] age who do not have

impairments." *See* 20 C.F.R. § 416.924a(a)(2)(iii); *Price ex. rel. A.N. v. Astrue*, 42 F. Supp. 3d 423, 434 (E.D.N.Y. 2014) ("the Administration 'will ask [claimant's] teacher(s) about [claimant's] performance in [claimant's] activities throughout [the] school day[;] [the Administration] will consider all the evidence [it] receive[s] from [claimant's] school, including teacher questionnaires, teacher checklists, group achievement testing, and report cards'") (quoting 20 C.F.R. § 416.924a(b)(7)(ii)).  The regulations also require efforts to gather school records containing results of any formal testing or describing any special services or accommodations provided to the claimant.  *See* 20 C.F.R. § 416.924a(a)(2)(iii); *Abrams v. Comm'r of Soc. Sec.*, 2016 WL 614683, *9 (E.D.N.Y. 2016) ("[i]n a case involving a school-age child, an ALJ's obligation to develop the administrative record includes an obligation to obtain information about how the claimant is functioning in school and any related educational reports").  "An ALJ's failure to fully develop a school-age claimant's educational record warrants remand."  *Melissa I. o/b/o R.J.R.D. v. Comm'r of Soc. Sec.*, 2022 WL 3358138 at *3.

The record demonstrates that plaintiff was homeschooled during her freshman and sophomore years and, beginning in September 2016, attended a public high school for her junior and part of her senior year, until she dropped out of school in December 2017.  (Tr. 51, 66-67, 282-86).  Plaintiff acknowledges that the record contains some of her high school education records but maintains that remand is warranted because the records obtained were incomplete.  (Docket ## 9-1 at 11-18; 11).  According to plaintiff, references in the obtained records demonstrate that additional records exist, including testing results, a 2016 psychological report, and records relating to plaintiff's participation in a vocational program.  (*Id.*).  Plaintiff also contends that the ALJ erred by failing to request that her teachers submit completed

questionnaires regarding her functioning.  (*Id.*).  Having reviewed the record, I conclude that there are no obvious gaps in the record and that remand is not warranted.

As an initial matter, the duty to obtain school records is triggered under the regulations if a claimant "go[es] to school."  *See* 20 C.F.R. § 416.924a(a)(2)(iii).  Plaintiff was no longer enrolled in school on May 4, 2018 – the amended alleged onset date – and, indeed, had not been attending school for several months preceding her onset date.  Accordingly, at no time during the relevant period was plaintiff attending school.  In any event, the record demonstrates repeated efforts at the administrative level to obtain plaintiff's educational records.  On May 31, 2018, a request was sent to plaintiff's high school and her school district requesting the relevant records.  (Tr. 93).  When none were received, a second letter was sent to plaintiff's school district requesting the records.  (Tr. 93, 238).  In response, the school district provided records, including therapy evaluations, a psychological evaluation, and plaintiff's individualized education program ("IEP") records.  (Tr. 239-65).  *See Melissa I. o/b/o v. R.J.R.D.*, 2022 WL 3358138 at *5 ("the duty to develop the record is nonetheless satisfied where, as here, the ALJ requested records and received a response, even if the response was incomplete[;] . . . nothing in the record suggests that the ALJ should have known that the response was incomplete") (quotations omitted).

With respect to the records plaintiff maintains are missing, it is not clear that all of them even exist or could be obtained.  For instance, plaintiff maintains that the ALJ should have obtained records reflecting plaintiff's performance in a vocational program in which she participated.  (Docket # 9-1 at 13).  Yet, nothing in the record suggests that such records even exist.  In any event, the record demonstrates that plaintiff was enrolled in this program for a relatively short period of time – approximately four months – just before she ceased attending

11

high school in December 2017. (Tr. 65-67). Plaintiff's speculation that these additional records

exist or could be obtained is not a sufficient basis upon which to warrant remand. *See Yanira*

*F. D. obo H.J.G.F. v. Comm'r of Soc. Sec.*, 2022 WL 4356970, *8 (W.D.N.Y. 2022) ("[o]ther

than [p]laintiff's own speculation, there is no evidence of the existence of additional school

records beyond what the ALJ received in response to her requests"); *Tennille R. obo A.C.J. v.*

*Comm'r of Soc. Sec.*, 2021 WL 2941734, *7 (W.D.N.Y. 2021) ("[p]laintiff fails to explain how

theoretical evidence from this after-school homework assistance program creates an obvious gap

in the administrative record, or how, without this evidence the ALJ did not possess a complete

medical history, such that he was obligated to seek additional information prior to adjudicating

[p]laintiff's claim") (internal quotations omitted); *Aman v. Colvin*, 46 F. Supp. 3d 220, 225 n.2

(W.D.N.Y. 2014) ("plaintiff's contentions that more records existed, or that such records, if they

did exist, would have supported her claim of disability, are wholly speculative").

   Regarding the other records identified by plaintiff, such records, to the extent they

exist, appear cumulative of the information already obtained and thus do not create a gap

warranting remand. Plaintiff maintains that the record is incomplete because plaintiff's IEP

references the results of several tests administered to plaintiff in 2016 but does not include "the

actual tests and findings." (Docket # 9-1 at 12). Plaintiff also complains that the IEP refers to a

psychological report authored in October 2016 that is not contained in the record. (*Id.*). Review

of the IEP demonstrates that the results of the various 2016 tests appear in the IEP itself, and the

IEP appears to summarize at length the psychological report interpreting those results.

(Tr. 248-50). Further, the record contains a more recent psychological evaluation completed by

the school psychologist in May 2017. (Tr. 258-65). Accordingly, no basis exists to conclude

that the absence of these records, to the extent they even exist, created any gap in the record

requiring remand. *See Yanira F. D. obo H.J.G.F. v. Comm'r of Soc. Sec.*, 2022 WL 4356970 at *8 ("[p]laintiff has provided no evidence that, even assuming[] *arguendo* these alleged missing records exist, they would have changed the ALJ's decision regarding [claimant's] disability").

Nor do I find that the ALJ erred in failing to secure completed questionnaires from plaintiff's teachers.[3] (Docket # 9-1 at 12, 13, 15). In addition to the education records discussed above, the ALJ considered medical evidence from plaintiff's treatment providers, including treatment notes spanning approximately nine years (from 2010 through 2019) authored by plaintiff's mental health provider. (Tr. 275-320, 417-20). The record also contains a medical source statement from plaintiff's mental health provider, as well as medical opinions authored by two consultative physicians. (Tr. 91-99, 267-70, 321-25). Although, opinions from plaintiff's teachers "may have provided additional gloss on the plaintiff's [functional capabilities], there is no reason to believe they would have changed the outcome of [her] disability application." *See Rodriguez v. Comm'r of Soc. Sec.*, 2019 WL 6050302, *7 (W.D.N.Y. 2019) (concluding there was no obvious gap in the record despite absence of completed teacher questionnaires where ALJ considered claimant's IEPs and "dozens of progress notes from [claimant's] treating therapist completed over a span of five years").

In this case, plaintiff has failed to demonstrate any significant or material gap in the record sufficient to require the ALJ to obtain additional educational records. Accordingly, I find that the record was sufficient for the ALJ to reach a disability determination and that remand is not warranted. *See Yanira F. D. obo H.J.G.F.*, 2022 WL 4356970 at *8 ("[t]he [c]ourt finds

---

[3] Review of the record does not make clear whether a request for completed questionnaires accompanied the initial administrative request for plaintiff's records directed to the school district. It is possible that they were never requested but also possible that a request was made but not fulfilled. It is also not clear that the individuals who taught plaintiff would have been available to complete such a questionnaire. By the time of plaintiff's alleged onset date, she had not been enrolled in school for several months. Moreover, by the time of the hearing before the ALJ, approximately two years had elapsed since plaintiff last attended school.

that the ALJ adequately developed the record in this case, and there are no obvious gaps in the

record"); *Melissa I. o/b/o R.J.R.D.*, 2022 WL 3358138 at *6 ("the ALJ did not err in failing to

develop the record because the record was adequate for the ALJ to make a determination");

*Tennille R. obo A.C.J. v. Comm'r of Soc. Sec.*, 2021 WL 2941734 at *7 ("there is no merit to

[p]laintiff's argument that the ALJ failed to develop the record[;] [t]he ALJ had a complete

record before him, and . . . substantial evidence in the record supports the ALJ's decision");

*Jones v. Colvin*, 2014 WL 2560593 at *5 ("the record fails to disclose any critical gaps sufficient

to trigger the ALJ's duty to develop the record by obtaining additional school records[;] . . . there

is no indication that [additional] records would have provided any significant missing

information").

## CONCLUSION

After a careful review of the record, this Court finds that the Commissioner's

denial of SSI was based on substantial evidence and was not erroneous as a matter of law.

Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's

motion for judgment on the pleadings **(Docket # 10)** is **GRANTED**.  Plaintiff's motion for

judgment on the pleadings **(Docket # 9)** is **DENIED**, and plaintiff's complaint (Docket # 1) is

dismissed with prejudice.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
_____
MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
            February 22, 2023

14